NATIONAL LABOR RELATIONS BOARD
v. FRED P. WEISSMAN CO.

NATIONAL LABOR RELATIONS BOARD
v. WEISSMAN et al.

Nos. 10535, 10536.

United States Court of Appeals,
Sixth Circuit.

Nov. 29, 1948.

Marcel Mallet-Prevost, of Washington, D. C. (David P. Findling, Ruth Weyand, Marcel Mallet-Prevost and Reeves R. Hilton, all of Washington, D. C., on the brief), for petitioner.

John L. Davis, of Lexington, Ky. (John L. Davis and William H. Townsend, both of Lexington, Ky., on the brief), for respondent.

Before HICKS, Chief Judge, ALLEN and MILLER, Circuit Judges.

HICKS, Chief Judge.

These cases were heard together and one opinion will suffice. Both cases are before the court on petitions of the National Labor Relations Board for the enforcement of its orders. The court has jurisdiction over both proceedings.

We shall consider first, case No. 10536. In that case the Board seeks the enforcement of its order issued on July 31, 1946 against respondents Fred P. Weissman, an individual d.b.a. Fred P. Weissman Company (herein called the Company), and Fred P. Weissman Company, a corporation (herein called the Corporation).

The order was made pursuant to Sec. 10(c) of the National Labor Relations Act, Act of July 5, 1935, ch. 372, 49 Stat. 449, 29 U.S.C.A. § 151 et seq., and is based upon findings that the Company violated Sec. 8(1) and (3) of the Act by discriminating against five employees because of their activity and membership in International Ladies Garment Workers Union, A.F.L., (herein called the Union), and by threats and statements by company officials and supervisory employees to members of the Union. The order requires respondents: to cease and desist from such unfair labor practices; to instruct their employees that they will not permit any employees to exclude other employees from the plant or to permit or threaten violence for such purposes, and to offer reinstatement with back pay to the five employees discriminated against; and to post appropriate notices.

At the hearing before the Trial Examiner and here, respondents denied that they had violated any of the provisions of the Act, and for an affirmative defense contend that the complaints against them stemmed from efforts of the Union through acts of "fraud and violence" to compel them to remove their business from Harrodsburg, Ky., back to New York, whence they originally came, and that the proceeding before the Board was not in aid of a bona fide effort by the Union to lawfully organize respondents' employees.

Laying to one side for a moment a consideration of this affirmative defense, we think that the findings of the Board are supported by substantial evidence.

Weissman was formerly engaged in New York City in the manufacture of women's coats. In 1940 he moved his business to Cincinnati and there resumed operations under the style of Fred P. Weissman Company. On account of a controversy between the Union and the Company over whether Weismann had discharged his obligations to the Union, under their New York contract, the Company abandoned Cincinnati and opened a plant in Lawrenceburg, Ind. The controversy not having been settled, the Company moved to Harrodsburg, Ky., and established its business there. In March 1945 the Company had more than 200 employees and the Union began a drive to organize them. This drive was marked by a heated campaign between Union and anti-Union employees, and resulted in much bitterness and ill feeling, and on September 19th a large number of anti-Union employees assembled at the door of the plant and by threats and force excluded Edna Teater, Drury and Springate, members of the Union, from the plant. Edna Teater was injured. Respondents' general manager, Drimmer, was present during this occurrence and there was substantial evidence that he approved the conduct of the anti-Union group. Supervisors Ransdell, King, Watts and Hellard were also present and Hellard took part in the scuffle with Edna Teater. Employee Floyd Shirley was present at this melee and at Edna Teater's request took her to a doctor. Upon Shirley's return to the plant he was stopped and questioned by

supervisor Hellard. He returned to his work and was approached by a group of anti-Union employees headed by Hellard and shortly thereafter by a second group headed by supervisor King. When Shirley was leaving the plant at noon he was approached by still another group, headed by Martha Weldon, and was told that his services were no longer needed and was ordered by the group not to come back. This group of employees held the door and Shirley testified that in view of the trouble the day before he made no effort to enter.

On October 29th, Ethel Sallee, a member of the Union, found the doors locked against her as she endeavored to enter for work, and a group of anti-Union employees there assembled told her,—"You just as well go on back, you don't have any job,—you are for the Union." Sallee reported this occurrence directly to Drimmer and by telephone to Weissman, but neither of them made any active effort to protect her. Teater, Drury, Springate, Shirley and Sallee were all discharged by written notice, upon the ground that they had voluntarily quit work. Each of them replied by letter as follows:

"A day or two ago I received a notice from you alleging that I had voluntarily quit your employment. . This alleged fact is not true.

"I was prevented from entering your building and denied the right to work by your straw bosses who claimed to be acting on orders from you. I made repeated efforts to see you and to talk to you over the telephone but you have refused to see me or to talk with me. I am ready, able and willing to continue with my work."

These letters were never answered by Weissman and these employees were never reinstated.

■ Weissman, the owner of the Company, doing business in its name, was of course responsible for his own acts; and Drimmer, the general manager, was responsible to Weissman and the Company for his conduct. Further, we think that respondents' employees might reasonably have regarded its supervisors, whose conduct was challenged, as representative of the policy of respondents. It is clear enough that the attitude of the anti-Union group of respondents' employees was encouraged, and tacitly, if not openly, approved by respondent Weissman, and the defense that he was under no obligation to protect his Union employees is without merit. Clover Fork Coal Co. v. N. L. R. B., 6 Cir., 97 F.2d 331, 355; Atlas Underwear Co. v. N. L. R. B., 6 Cir., 116 F.2d 1020, 1021, 1023.

■ The order sought to be enforced was not only directed to Weissman and his Company, but to the Corporation as well, although the Corporation was not organized and did not take over the business until the unfair labor practices complained of had already occurred. Such a circumstance does not invalidate the order. The Corporation was successor to the Company and to Weissman. It continued operations under the same name, doing the same business at the same location, with the same employees and the same customers. There was no change in the relationship between the employer and the employees. The order was prospective in its nature. See National Labor Relations Board v. Colten, 6 Cir., 105 F.2d 179, 183.

■ Something should be said touching respondents' claim that the Board's order was invalid because the evidence disclosed that the Union used the processes of the Board to force respondents, by threats and violence, to return to New York. Respondents rely upon National Labor Relations Board v. Indiana & Michigan Elec. Co., 318 U.S. 9, 29, 63 S.Ct. 394, 87 L.Ed. 579; and Labor Board v. Donnelly Co., 330 U. S. 219, 233, 67 S.Ct. 756, 91 L.Ed. 854. In the Indiana & Michigan Elec. Co. case, at page 18 of 318 U.S., at page 400 of 63 S. Ct., the court said: "Dubious character, evil or unlawful motives, or bad faith of the informer cannot deprive the Board of its jurisdiction to conduct the inquiry." It also said, at page 19 of 318 U.S., at page 400 of 63 S.Ct., "The Board might properly withhold or dismiss its own complaint if it should appear that the charge is so related to a course of violence and destruction, carried on for the purpose of coercing an employer to help herd its employees into the complaining union, as to

constitute an abuse of the Board's process." But the court said further, at page 18 of 318 U.S., at page 400 of 63 S.Ct., "While we hold that misconduct of the union would not deprive the Board of jurisdiction, this does not mean that the Board may not properly consider such misconduct as material to its own decision to entertain and proceed upon the charge."

█ We are in full accord with these pronouncements. There is considerable evidence which would have justified the Board in refusing to entertain and proceed upon the charges filed against the respondents because of bad faith and unlawful motives on the part of the Union, but as pointed out in the Electric Co. case, this is a matter within the discretion of the Board. The Examiner received and considered respondents' evidence bearing upon its affirmative defense and held that their contention was not supported by the record, and the Board concurred. The Board considered the evidence in the aggregate, i. e., that relating to the enforcement of its order, as well as respondents' contention that the action of the Union was unlawful and arrived at a well sustained inference contrary to respondents' claim. We are not authorized to nullify its decision. National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368; National Labor Relations Board v. Nevada Consol. Copper Corp., 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305.

The Donnelly case presents an entirely different question, as stated therein by the Union, which was a party to that cause.

In case No. 10535, the Board seeks the enforcement of its order issued against respondent Corporation on September 30, 1946. The order is based upon findings that respondent discharged one of its employees, Mildred Sims, in violation of Sec. 8(1) (3) and (4) of the Act because of her activity and membership in the Union, and further, because she testified for the Board at the hearing before the Examiner in case No. 10536.

The order requires respondent: to cease and desist from such unfair labor practices; to instruct its employees that it will not permit any group of employees to exclude other employees from respondent's plant or to exercise or threaten physical violence upon employees at the plant because of their membership in or support of any labor organization, or because they have given testimony under the Act; and offer reinstatement with back pay to Mildred Sims, and to post appropriate notices.

On February 20, 1946, Mildred Sims testified for the Board before the Trial Examiner in case No. 10536. That hearing was concluded on March 6th and on the next day, as Mildred Sims left the plant, she was confronted by an anti-Union group of employees and was told that "her services were no longer needed and that * * * she needn't come back in the morning * * * because she couldn't get in." Her relations with this group immediately became strained and she did not report for work the next morning, but on the afternoon of March 11th and thereafter she made efforts by telephone, correspondence and otherwise, to contact the officers and managers of respondent and advise them that she had not quit work and desired reinstatement. She was systematically foiled on one pretext and another, and Weissman finally declined to reinstate her on the ground that he was unwilling to interfere in a dispute between conflicting groups of employees and that her reinstatement would not be conducive to preserving harmony at the plant.

█ It is manifest that these reasons were without basis in good faith. Mildred Sims was entitled to protection by respondent from the anti-Union element of its employees and there is a substantial inference that she failed of reinstatement because of her activities in behalf of the Union. It is clear enough that in her case respondent engaged in unfair labor practices within the meaning of Sec. 8(1) (3) and (4) of the Act. See National Labor Relations Board v. Hudson Motor Car Co., 6 Cir., 128 F.2d 528, 532; and National Labor Relations Board v. General Motors Corp., 7 Cir., 116 F.2d 306, 309.

The Board is entitled to an order of enforcement in each case, and it is so ordered.