**G. P. D., INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 19963.**

United States Court of Appeals,
Sixth Circuit.

Aug. 11, 1970.

James D. Tracy, Detroit, Mich., for petitioner; Timothy K. Carroll, Dykema, Wheat, Spencer, Goodnow & Trigg, Detroit, Mich., on brief.

Herbert Fishgold, Atty., N.L.R.B., Washington, D. C., for respondent; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Abigail Cooley Basker, Atty., N.L.R.B., Washington, D. C., on brief.

Before EDWARDS, CELEBREZZE and McCREE, Circuit Judges.

EDWARDS, Circuit Judge.

This is a petition to review and a cross-petition to enforce a supplemental order of the National Labor Relations Board. 179 N.L.R.B. No. 31. In its original opinion, G.P.D. Inc. v. NLRB, 406 F.2d 26 (6th Cir.1969), the court (with one judge dissenting) enforced several provisions of the Board's order and remanded the portion of the order of the Board requiring bargaining. The remand provided:

> "The Board's order is enforced with respect to the Section 8(a) (1) violation to the extent hereinbefore approved, and is enforced with respect to the Section 8(a) (3) violations. However, enforcement is denied with respect to the other Section 8(a) (1) violations and the Section 8(a) (5) violation; and the case is remanded for further consideration of the proper remedial order."

The Board has now reconsidered the record. It was not asked to take and took no additional evidence, but at the Board's invitation the parties filed several statements of position. In the meantime (after the remand but before the additional briefing), the *Gissel* case

(NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969)) was decided. Weighing its decision against the standard of that case, the Board found that unfair labor practices had been committed "that interfere with the election processes and tend to preclude the holding of a fair election." NLRB v. Gissel Packing Co., *supra* at 594, 89 S.Ct. at 1930. The Board again entered a bargaining order and herein seeks enforcement of same.

G.P.D.'s basic contentions are that a bargaining order is not justified because there is no threat that its prior illegal conduct will recur and because in the four and one-half years of litigation which has followed the initial organization of its employees there has been a nearly complete turnover of its employees (seven new employees out of eight). G.P.D. protests the bargaining order as being unfair to its new employees. G.P.D. relies heavily upon this court's opinions in Clark's Gamble Corp. v. NLRB, 407 F.2d 199 (6th Cir.), vacated and remanded, 396 U.S. 23, 90 S. Ct. 197, 24 L.Ed.2d 143 (1969), affirmed 422 F.2d 845 (6th Cir.1970), petition for cert. filed, 38 U.S.L.W. 3510 (U.S. June 15, 1970) (No. 1697).

■■ As we read this record, there is no justification for any of these arguments. G.P.D. responded to the organization of its employees (seven out of eight of whom joined the union and signed representation cards) by a classic pattern of violations of the National Labor Relations Act. Included therein were the illegal discharges of four employees (a majority of the union adherents and half of its working force). The purpose of the remedial powers given by Congress to the NLRB is to provide remedy for violations of the Act by re-establishing as nearly as possible the status quo ante (*before* the violations took place). G.P.D. in effect asks this court to reward its illegal conduct by relating the bargaining decision to the status quo post (*after* the illegal discharges and replacements).

Nor can G.P.D. properly rely upon the *Clark's Gamble* case. The court there reasoned that where the Board's own delay had occasioned the turnover of employees, the Board should decide whether or not a fair election could be held with the new group. Regardless of the merits of that decision, it can hardly be deemed applicable to a record such as this where G.P.D.'s own willful and gross violations of the NLRA directly caused both the turnover of employees and the delay.

As we see the matter, the United States Supreme Court itself has recently and unanimously answered all of G.P.D.'s arguments:

"Remaining before us is the propriety of a bargaining order as a remedy for a § 8(a) (5) refusal to bargain where an employer has committed independent unfair labor practices which have made the holding of a fair election unlikely or which have in fact undermined a union's majority and caused an election to be set aside. We have long held that the Board is not limited to a cease-and-desist order in such cases, but has the authority to issue a bargaining order without first requiring the union to show that it has been able to maintain its majority status. See NLRB v. Katz, 369 U.S. 736, 748, n. 16, 82 S.Ct. 1107, 1114, 8 L.Ed.2d 230 (1962); NLRB v. P. Lorillard Co., 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380 (1942). And we have held that the Board has the same authority even where it is clear that the union, which once had possession of cards from a majority of the employees, represents only a minority when the bargaining order is entered. Franks Bros. Co. v. NLRB, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020 (1944). We see no reason now to withdraw this authority from the Board. If the Board could enter only a cease-and-desist order and direct an election or a rerun, it would in effect be rewarding the employer and allowing him 'to profit from [his] own wrongful refusal to bargain,' *Franks*

*Bros., supra,* at 704, 64 S.Ct. at 818, while at the same time severely curtailing the employees' right freely to determine whether they desire a representative. The employer could continue to delay or disrupt the election processes and put off indefinitely his obligation to bargain; and any election held under these circumstances would not be likely to demonstrate the employees' true, undistorted desires.

"The employers argue that the Board has ample remedies, over and above the cease-and-desist order, to control employer misconduct. The Board can, they assert, direct the companies to mail notices to employees, to read notices to employees during plant time and to give the union access to employees during working time at the plant, or it can seek a court injunctive order under § 10(j) (29 U.S.C. § 160(j)) as a last resort. In view of the Board's power, they conclude, the bargaining order is an unnecessarily harsh remedy that needlessly prejudices employees' § 7 rights solely for the purpose of punishing or restraining an employer. Such an argument ignores that a bargaining order is designed as much to remedy past election damage as it is to deter future misconduct. If an employer has succeeded in undermining a union's strength and destroying the laboratory conditions necessary for a fair election, he may see no need to violate a cease-and-desist order by further unlawful activity. The damage will have been done, and perhaps the only fair way to effectuate employee rights is to re-establish the conditions as they existed before the employer's unlawful campaign. There is, after all, nothing permanent in a bargaining order, and if, after the effects of the employer's acts have worn off, the employees clearly desire to disavow the union, they can do so by filing a representation petition. For, as we pointed out long ago, in finding that a bargaining order involved no 'injustice to employees who may wish to substitute

for the particular union some other * * * arrangement,' a bargaining relationship 'once rightfully established must be permitted to exist and function for a reasonable period in which it can be given a fair chance to succeed,' after which the 'Board may, * * * upon a proper showing, take steps in recognition of changed situations which might make appropriate changed bargaining relationships.' *Franks Bros., supra,* at 705–706, 64 S.Ct. at 819." NLRB v. Gissel Packing Co., 395 U.S. 575, 610–613, 89 S.Ct. 1918, 1938–1940 (1969) (Footnotes omitted.)

The petition for review is denied.

We grant enforcement of the order of the NLRB.

McCREE, Circuit Judge (dissenting).

I respectfully dissent. Although in N.L.R.B. v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), the Supreme Court approved the Board's use of bargaining orders to remedy an employer's unfair labor practices, the Court nevertheless made it clear that an election was the preferred method for establishing a union's representative status. The Court recognized the appropriateness of bargaining orders in those situations where "the possibility of erasing the effects of past practices and of *ensuring a fair election* (or a fair rerun) by the use of traditional remedies, though present, is slight." 395 U.S. at 614, 89 S.Ct. at 1940 (emphasis added).

Under this standard, I believe it was incumbent upon the Board to determine whether, at the time it reaffirmed the bargaining order, the electoral atmosphere was still so contaminated by the company's earlier unfair labor practices that a fair election was unlikely. The Board contends that it made this determination. However, it did so on the basis of the pre-remand record containing evidence of conditions only as they existed at the time of the hearing conducted by the Trial Examiner in 1966. No new hearing was conducted, nor was any new evidence adduced, following our remand

order.[1] As the Fifth Circuit observed in a similar case, "the Board refused to look at the contemporary necessity for [a bargaining] order, satisfying itself with a jejune regurgitation of the Company's [earlier] waywardness." N.L.R.B. v. American Cable Systems, Inc., 427 F.2d 446 (5th Cir.1970).

Yet, in the interim between the Board's original order in this case and its supplemental decision, a nearly complete turnover in the composition of the company's workforce had occurred. Seven new employees had been hired, and only one employee who had been part of the bargaining unit at the time the company committed its unfair labor practices remained. Moreover, a period of approximately two and one-half years had elapsed.

I cannot understand how the Board could determine at the time of its supplemental decision that the possibility of "ensuring a fair election * * * by the use of traditional remedies, though present, [was] slight," when it received no evidence concerning contemporary conditions at G.P.D., Inc. Furthermore, I think that only by considering evidence of existing conditions could the Board properly discharge its obligation to promote the Congressionally stated purpose of guaranteeing the rights of *employees* "to bargain collectively through representatives of *their own* choosing." Section 7 of the National Labor Relations Act, as amended, 29 U.S.C. § 157 (emphasis added).

Of course, I do not suggest that merely because there had been a turnover in employees and a substantial amount of time had elapsed since the Board's original order that the ill effects of the company's earlier unfair labor practices necessarily had been dissipated. *Cf.* N.L.R.B. v. Katz, 369 U.S. 736, 748 n. 16, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962). Indeed, evidence adduced at a hearing might have demonstrated that the employee turnover was the result of a com-

pany purge of union adherents, in which case a bargaining order would be justified. I dissent only because the Board received no evidence of the presently existing situation and the present possibilities for a fair election. *See* N.L.R.B. v. American Cable Systems, Inc., *supra.*

Board orders are entitled to enforcement only if they are "supported by substantial evidence on the record considered as a whole". Section 10(e) of the National Labor Relations Act, as amended 29 U.S.C. § 160(e); Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). In light of the Board's procedure in the present case, there is not only a lack of substantial evidence, there is, for all practical purposes, no evidence to support the bargaining order. Accordingly, I would deny enforcement and again remand this case to the Board for further proceedings.

---

1. In this regard, I observe that I do not, nor apparently did the Board, consider

the parties' "statements of position" evidence.