NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

LOU DE YOUNG'S MARKET BASKET,
INC., Respondent.

No. 18160.

United States Court of Appeals,
Sixth Circuit.

Sept. 8, 1970.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Ronald Grenbrg, Attorneys, N. L. R. B., Washington, D. C., on brief for petitioner.

Varnum, Riddering, Wierengo & Christenson, Eugene Alkema, Gary P. Skiner, Grand Rapids, Mich., on brief for respondent.

Before PHILLIPS, Chief Judge, and EDWARDS and CELEBREZZE, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is a petition to review and a cross-petition to enforce a supplemental decision and order of the National Labor Relations Board, 181 NLRB No. 10. The motion of the Retail Stores Employees Union Local No. 20 to intervene was granted and such intervention was permitted upon briefs.

In June, 1966, the National Labor Relations Board (hereinafter, the "Board") issued a decision and order, 159 NLRB 854 (1966), in which it found that Lou De Young's Market Basket, Inc. (hereinafter the "Company") had violated Section 8(a) (1), (3) and (5) of the National Labor Relations Act and ordered the Company to cease and desist from such unfair labor practices and to take certain affirmative action including recognition and good faith bargaining with the Retail Store Employees Union, Local No. 20 (hereinafter, the "Union"). Upon petition to enforce the Board's order, this Court enforced the Board's initial order in full. In so doing, this Court affirmed the Board's factual findings that the Company engaged in unlawful "threats, surveillance and interrogation" in response to the Union's organizational drive, that the Company discharged three workers during the Union campaign as a result of their Union activities and beliefs, and that the Company had no good faith doubts as to the majority status of the Union adherents when it refused to bargain with the Union in response to the latter's unequivocal bargaining demand based upon valid authorization cards. Further, this Court characterized the Company's conduct as "a substantial and sustained effort to thwart * * * [its own] employees in their efforts to organize the store" by committing unfair labor practices which may be described as "flagrantly coercive." NLRB v. Lou De Young's Market Basket, Inc., 406 F.2d 17, 25, 26 (6th Cir. 1969).

In June, 1969, the United States Supreme Court decided, NLRB v. Gissel Packing Company, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1965), in which it laid down guidelines as to when a Company's refusal to bargain in violation of Section 8(a) (5) may give rise to a bargaining order. Subsequently, the United States Supreme Court granted certiorari and remanded this case to this Court "with instructions to remand * * * to the National Labor Relations Board for further consideration in light of NLRB v. Gissel Packing Co., Inc., ante, p. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547." 395 U.S. 828, 89 S.Ct. 2125. Shortly thereafter, this Court remanded the case to the Board in conformity with the Supreme Court's order, 414 F.2d 351.

In February, 1970, the Board issued a supplemental decision and order in which it found that the various acts of interference, restraint, coercion and

discriminatory discharges committed by the Company in its campaign to defeat the Union's organizational efforts were "so coercive and pervasive as to destroy the conditions for a free election." Further, the Board found that the unfair labor practices committed were so severe that the "employee sentiment as expressed through authorization cards is a more reliable measure of employee desires on the issue of representation than an election in this case." This later factual finding is based upon the premise that an election would be held after "neutralization by any conventional remedies." Upon those factual findings, the Board issued an order affirming its original bargaining order. The Company challenges the sufficiency of the evidence to support the factual findings of the Board as to the possibility of a new election being fair.

■ In *Gissel Packing,* the United States Supreme Court stated that before issuing a bargaining order as a remedy for a § 8(a) (5) refusal to bargain where an employer has committed independent unfair labor practices, the Board must determine which of three categories of unfair labor practices and circumstances were present. First, in those cases in which " 'outrageous' and 'pervasive' unfair labor practices" occur, a bargaining order may be imposed without need to inquire into the majority status of the representation. Such cases would be limited to those practices of " 'such a nature that their coercive effects cannot be eliminated by the application of traditional remedies, with the result that a fair and reliable election cannot be had.' NLRB v. S. S. Logan Packing Co., 386 F.2d 562, 570 (C.A. 4th Cir. 1967)." "Outrageous" and "pervasive" unfair labor practices would include a situation such as the "illegal discharges of four employees (a majority of the Union adherents and half of its [the Company's] working

force)," G.P.D., Inc. v. N.L.R.B., 430 F. 2d 963, No. 19963 (6th Cir. 1970). *See* Bok, The Regulation of Campaign Tactics in Representation Elections Under the National Labor Relations Act, 78 Harv.L.Rev. 34, 132–139 (1964).

■ Second, where a union has made a "showing" of majority representation "at one point" and the employer has engaged in "misconduct" which has the "tendency to undermine majority strength and impede the election process," the Board has the discretion to issue a bargaining order. In exercising its discretion, the Board should look to the effect of the employer's conduct on election conditions and the likelihood of the occurrence of unfair labor practices in the future. Further, since the Board "draws on a fund of knowledge and expertise all its own" in making judgments as to the effect of unfair labor practices, it should be regarded as being in a "better" position than reviewing courts to "estimate * * * the effects on the election process of unfair labor practices of varying intensity," NLRB v. Gissel Packing Co., 395 U.S. at 612 n. 32, 89 S.Ct. at 1939.[1] It is for the Board, rather than the reviewing courts, to determine whether the discriminatory discharge of employees, the intimidation of Union representatives, United Steelworkers of America v. NLRB, 126 U.S. App.D.C. 215, 376 F.2d 770 (1967), or other coercive and unfair labor practices have made the possibility of a fair rerun election so slight "that employee sentiment once expressed through cards would, on balance be better protected by a bargaining order." NLRB v. Gissel Packing Co., 395 U.S. at 614–615, 89 S.Ct. at 1940. And upon review we are urged not to substitute our discretion for that of the agency, NLRB v. Gissel Packing Co., 395 U.S. at 612 n. 32, 89 S.Ct. 1918; Consolo v. FMC, 383 U.S. 607, 621, 86 S.Ct. 1018, 16 L.

1. With regard to the effect of specific labor practices the Court did indicate that studies have shown that "threats to close or transfer plant operations" seem less remediable than "threats to eliminate benefits or refuse to deal with the union if elected," 395 U.S. 611 n. 31, 89 S.Ct. 1938.

Ed.2d 131 (1966), unless it reflects so gross an abuse of power as to be arbitrary. Consolo v. FMC, supra.

■ Third, where the unfair labor practices have a minimal impact on the election machinery, the Board is charged not to issue a bargaining order. Such "minor" unfair practices would probably include a limited interrogation of employees to poll employee sentiment which while it may be violative of Section 8(a) (1) and the requirements set out in Struksnes Construction Co., 165 NLRB, No. 102, "might not be serious enough to call for a bargaining order," NLRB v. Gissel Packing Co., 395 U.S. at 609, 89 S.Ct. at 1938. *See* Aaron Brothers, 158 NLRB 1077, Hammond & Irving, Inc., 154 NLRB 1071 (1965).

Applying these guidelines to the instant case, the Board found that the Company's unfair labor practices were "pervasive" and "coercive;" and that, in any case, the "use of traditional remedies" could not assure that an election would better protect the employees' rights already expressed through authorization cards. The Board points to two pieces of evidence to support its conclusions: the discharging, by the Company of three active union supporters during the Union's organizational campaign and the occurrence of six other independent violations of Section 8(a) (1), including threats of job layoffs. The Board further points out that this Court has characterized the Company's conduct as "flagrantly coercive" and a substantial and sustained [unlawful] effort to thwart * * * efforts to organize * * * [the Company's] store." NLRB v. Lou De Young's Market Basket, Inc., 406 F.2d at 25, 26.

■ Upon a review of the entire record including the brief of the parties, we once again cannot say that the findings of fact made by the Board with regard to the Company's refusal to bargain are not supported by substantial evidence, as the Company contends. NLRB v. Lou De Young's Market Basket, Inc., 406 F.2d 17. Further, the

Board's remedy of a compulsory bargaining order appears to be a "reasonable vindication of the Act and its purposes," United Steelworkers of America v. NLRB, 376 F.2d 770 (1967), in view of the number and severity of the unfair labor practices engaged in by the Company during the Union organization activities. Such practices, particularly the circumstances of the dismissals of three leading union adherents and the threat of employee layoffs, are sufficient to bring this case within the "intermediate situation" in Gissel Packing Co. in which the Board is given the discretion to determine whether "the risks that a fair rerun election might not be possible were too great to disregard the desires of the employees already expressed through cards." NLRB v. Gissel Packing Co., 395 U.S. at 615, 89 S.Ct. at 1941.

■ Finally, the Company contends "that the issuance of a bargaining order is now clearly inappropriate in view of the substantial and nearly complete turnover of bargaining unit employees which has occurred since" the unfair labor practices took place. Clark's Gamble Corp. v. NLRB, 422 F.2d 845 (6th Cir. 1970). This precise issue was raised in G.P.D., Inc. v. NLRB, 430 F.2d 963, No. 19963 (6th Cir. 1970) and this Court held that *Clark's Gamble* was to be read narrowly and limited to the situation of an unusually long delay and almost complete turnover of employees occasioned by the Board's own inaction. The instant case, like G.P.D., involves such voluntary Company actions as coercive unfair labor practices and discriminatory discharges which are "gross violations of the NLRA;" and such Company actions "directly caused both the turnover of employees and the delay." G.P.D., Inc. v. NLRB, 430 F.2d at 963.

The petition for review is denied and the cross petition for enforcement of the Board's supplemental order is granted.