877 F.2d 62
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CAMVAC INTERNATIONAL INC., Petitioner, Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner
 Nos. 88-5573, 88-5625.
 United States Court of Appeals, Sixth Circuit.
 June 20, 1989.
 
 Before MERRITT and KRUPANSKY, Circuit Judges, and DOUGLAS W. HILLMAN, Chief District Judge*
 MERRITT, Circuit Judge.
 
 
 1
 Camvac International, Inc. petitions for review of an order of the NLRB compelling it to bargain with Local 445 of the International Brotherhood of Teamsters at its facility in Brewster, New York. The Board seeks enforcement of the order. The Union has not intervened in proceedings before this Court.
 
 
 2
 Camvac raises four issues on appeal, and additionally has filed a motion to supplement the record. We must remand the case to the Board, however, because two of these issues must be resolved by the Board. Because we are remanding on two issues, we do not need to reach a ruling on the remaining issues or on Camvac's motion to supplement the record.
 
 
 3
 (1) Section 9(c)(3) Bar. The parties are agreed that the Teamsters' card campaign was conducted less than one year after another union, the International Brotherhood of Painters, had failed to obtain a majority in a Board-ordered secret-ballot election. Camvac's position is that Sec. 9(c)(3) of the N.L.R.A., 29 U.S.C. Sec. 159(c)(3), protects it not only from another Board-ordered election within that period, but also from the bargaining order promulgated under the Supreme Court's case. N.L.R.B. v. Gissel Packing Co., 395 U.S. 575 (1969). It appears that Camvac has raised a question of first impression in the Sixth Circuit, and we note that it is a question of some difficulty.
 
 
 4
 Neither the ALJ who initially decided this controversy nor the NLRB in its decision and order addressed the merits of this claim. The Board asserts before us that Camvac's Sec. 9(c)(3) claim was waived because it was not timely raised before the Board. We reject that contention, and remand the issue for the Board's decision.
 
 
 5
 In framing its timeliness argument, the Board argues that Camvac did not raise its Sec. 9(c)(3) argument until June 20 or 21, 1988, when it filed a supplemental motion for reconsideration of the Board's April 25, 1988 decision. The supplemental motion was denied as untimely pursuant to 29 C.F.R. Sec. 102.48(d)(2). We have no quarrel with that ruling. We do not agree, however, that the supplemental motion constitutes Camvac's first gesture placing its Sec. 9(c)(3) claim before the Board. We have before us a copy of Camvac's Brief in Support of Exceptions to the Decision of the ALJ, filed with the Board on August 12, 1983, which we hereby add to the record on appeal pursuant to Rule 10(e) of the Federal Rules of Appellate Procedure. This brief explicitly raises the Sec. 9(c)(3) issue at pages 85-86.
 
 
 6
 We see nothing in the regulations that prevents Camvac from relying on this brief to preserve its Sec. 9(c)(3) issue. Though 29 C.F.R. Sec. 102.46(h) specifically provides that any exception to an ALJ decision that is not timely urged after the issuance of that decision shall be waived, 29 C.F.R. Sec. 102.46(b)(1) requires any party that elects to submit both an exceptions document and a supporting brief to assert any "argument[s]" and "citation[s] of authority" that support its exceptions in the supporting brief rather than in the exceptions document itself. Thus, the regulations anticipate and indeed require that a party submitting a supporting brief state subsidiary arguments in that brief and not in the exceptions document. See N.L.R.B. v. United States Postal Service, 833 F.2d 1195, 1202 (6th Cir.1987). We reject the contrary rule apparently announced in United Parcel Service, Inc. v. N.L.R.B., 706 F.2d 972, 979 n. 16 (3d Cir.), cert. granted and judgment vacated on other grounds, 464 U.S. 979 (1983), a position taken without, as we note, any scrutiny of the special requirements of 29 C.F.R. Sec. 102.46(b)(1).
 
 
 7
 Camvac included its Sec. 9(c)(3) argument within the section of the supporting brief devoted to its exception to the determination that a bargaining order was appropriate on the facts of this case. We hold that Camvac's brief in support of its exceptions to the ALJ's decision satisfied its duty to raise the Sec. 9(c)(3) argument before the Board. Because this holding requires us to remand Camvac's Sec. 9(c)(3) argument for the Board's decision, we do not need to reach Camvac's argument that its Sec. 9(c)(3) argument is jurisdictional and therefore cannot be waived.
 
 
 8
 (2) Turnover. Camvac argues on appeal that the Board abused its discretion by failing to consider whether turnover at its Brewster facility has rendered the Gissel order inappropriate. We agree that the Board must decide this question, and remand it.
 
 
 9
 The first complaint against Camvac for the conduct at issue in this case issued in September 1981. The ALJ issued her decision on May 13, 1983. Camvac promptly took exception to the ALJ's report, and the case was submitted to the Board. Not until a date almost five years later--on April 29, 1988--did the Board issue its decision and order. On June 15, 1988, Camvac moved for reconsideration and for reopening of the record, arguing that it could prove 90% turnover at the Brewster facility since the alleged unfair labor practices took place and that such a high degree of turnover dissipated the need for a Gissel order. The Board denied the motion as untimely. The Board thus stood by evaluation of the extensive seven-year delay between violations and its order that it inserted in its April 29, 1988 decision:
 
 
 10
 Although there has been a significant passage of time since the violations occurred, in light of the circumstances of this case, and particularly the seriousness of the violations and their impact on the entire unit, to withhold a bargaining order here would reward the Respondent for its own wrongdoing. The passage of time, though regrettable, is not a sufficient basis for denying a bargaining order.
 
 
 11
 Camvac International, Inc. v. Local 445, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO, 288 N.L.R.B. No. 92, 21 (Apr. 29, 1988).
 
 
 12
 We hold that the Board should have looked more closely at the turnover issue in this case. Because of this error, it improperly denied the motion to reconsider and to reopen the record. 29 C.F.R. Sec. 102.48(d)(2) specifically permits the Board to accept such motions beyond the 28-day period. Here, the Board was directly confronted with evidence that may well, upon full consideration, not only vitiate the need for the bargaining order but also render the order positively unfair to current employees at Convac's Brewster facility. In light of the Board's earlier error in failing to give serious consideration to the turnover issue by making specific findings, it was an abuse of discretion for the Board not to accept such evidence--which Camvac concedes was proffered approximately three weeks late but which it reminds us became relevant only by virtue of an order issued after five years' delay by the Board--in order to correct the Board's deficient consideration of the turnover issue in its decision.
 
 
 13
 It is true that the Board is fully empowered to determine that, on the facts of a particular case, a Gissel order is necessary despite a significant delay because the less strict remedy, an election, would merely reward the employer for its misconduct. The risk foreseen by the Supreme Court is that "recalcitrant employers might be able by continued opposition to union membership indefinitely to postpone performance of their statutory obligation." Franks Bros. Co. v. N.L.R.B., 321 U.S. 702, 705 (1944). But this concern must be weighed against the equally compelling one acknowledged in Gissell itself: that worker democracy is more surely protected by the election and certification process than by a card campaign. Gissel, 395 U.S. at 602. It is therefore not enough for the Board merely to recite a formula inspired by the Franks case--as it did in this case when it said, in a conclusory fashion, that "to withold a bargaining order here would reward the Respondent for its own wrongdoing"--without testing the justification for the proposed remedy against the actual facts of the case before it.
 
 
 14
 The Board must consider turnover in assessing the appropriateness of a Gissel order. N.L.R.B. v. Creative Food Design Ltd., 852 F.2d 1295, 1302 (D.C.Cir.1988); Impact Industries, Inc. v. N.L.R.B., 847 F.2d 379, 383 (7th Cir.1988); N.L.R.B. v. Knogo Corp., 727 F.2d 55, 60 (2nd Cir.1984). Specifically, it must consider whether the chilling effect of the employer's misconduct persists despite the turnover and thus continues to justify a Gissel order, N.L.R.B. v. Pace Oldsmobile, Inc., 739 F.2d 108, 112 (2d Cir.1984), and whether, given the turnover rate, a bargaining order would "do violence to majority will at the time the bargaining order issues," Creative Foods, 852 F.2d at 1302.
 
 
 15
 It may be that, on the facts of a given case, the concern expressed by Justice Black in the Franks case--that an employer will exploit the delay caused by the administrative controversy to benefit by and persist in its antiunion conduct--will find record support. As Gissel itself warns, a bargaining order will be fully justified where the employer is found to be motivated "by a desire to gain time to dissipate ... [majority] status." Gissel, 395 U.S. at 583. Similarly, employer violations which themselves cause the claimed turnover may make a bargaining order necessary despite the fact that new employees are never asked to vote on their representative. G.P.D., Inc. v. N.L.R.B., 430 F.2d 963, 964 (6th Cir.1970), cert. denied, 401 U.S. 974 (1971). And even where otherwise innocent turnover is numerically significant, the facts may demonstrate a likelihood that new and potential employees continue to be intimidated by the employer's illegal antiunion activity. Exchange Bank v. N.L.R.B., 732 F.2d 60, 64 (6th Cir.1984). On the other hand, where the lapse of time and resultant turnover are entirely the products of the Board's delay, that fact must be carefully considered. Clark's Gamble Corp. v. N.L.R.B., 422 F.2d 845, 846-47 (6th Cir.), cert. denied, 400 U.S. 868 (1970); N.L.R.B. v. J. Coty Messenger Service, Inc., 763 F.2d 92, 101 (2d Cir.1985). These are fact-sensitive determinations which--if not made unnecessary by the unequivocal voice of the record--must be explicitly made in a given case.
 
 
 16
 Where the Board has failed to give adequate consideration to a turnover problem, courts have denied enforcement. J. Coty Messenger Service, 763 F.2d at 101; Knogo. Under the circumstances of this case, however--particularly in light of Camvac's untimely presentation of turnover evidence--we believe that the proper solution is a remand.
 
 
 17
 For all the foregoing reasons we remand this case to the Board for a determination of two issues: (1) whether Sec. 9(c)(3) operates to bar a Gissel order in this case, and (2) whether turnover at the Brewster facility has rendered the Gissel order inappropriate. We further order that the Board expedite its decision.
 
 
 
 *
 The Honorable Douglas W. Hillman, Chief Judge of the United States District Court for the Western District of Michigan, sitting by designation