217 F.2d 652
 J. W. DICKEY and R. L. Round, Formerly Doing Business as Ohio Hoist and Manufacturing Company, and Ohio Hoist & Manufacturing Co., Inc., a Corporation, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, International Brotherhood of Blacksmiths, Drop Forgers and Helpers, A. F. L., and International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, A. F. L., Respondents.
 No. 12236.
 United States Court of Appeals Sixth Circuit.
 December 16, 1954.
 
 John M. Jarboe, Akron, Ohio, William B. Moore, Lisbon, Ohio, for petitioners.
 Samuel M. Singer, Washington, D. C., George J. Bott, David P. Findling, A. Norman Somers, Nancy M. Sherman, Washington, D. C., on brief, for respondent.
 Before ALLEN, MARTIN and MILLER, Circuit Judges.
 ALLEN, Circuit Judge.
 
 
 1
 This is a petition to review an order of the National Labor Relations Board entered in proceedings instituted by the International Brotherhood of Blacksmiths, Drop Forgers and Helpers (AFL), hereinafter called the "Blacksmiths," who were the certified bargaining agent of the employees involved. Unfair labor practices under Sections 9 and 10 of the Labor Management Relations Act, 1947, 29 U.S.C., Supplement V, Section 151 et seq., 29 U.S.C.A. § 151 et seq., were charged. The Board in its answer prays for enforcement of the order.
 
 
 2
 A preliminary question is presented arising from the fact that petitioners, Dickey and Round, were members of a partnership which was dissolved around April 30, 1953, a corporation being formed which took over the operation of the partnership and of which Dickey was the sole owner. The trial examiner found that the corporation was the alter ego of the partnership and was subject to the order of the Board, and this finding was approved by the Board.
 
 
 3
 Petitioners attack this finding, claiming in effect that under the ruling of the Fourth circuit in Mt. Hope Finishing Co. v. N. L. R. B., 211 F.2d 365, the finding was incorrect. In the Mt. Hope case the business of a Massachusetts corporation was removed from Massachusetts to North Carolina. With respect to the labor controversies involved, the court there found that the North Carolina corporation, formed after the removal of the business from Massachusetts, was not the alter ego of the Massachusetts corporation, largely because the owner of 60% of the stock in the Massachusetts corporation became the sole owner of the North Carolina corporation. In the instant case, Dickey, who was the active partner, became the sole owner of the Ohio Hoist & Manufacturing Co., Inc. For this reason petitioners claim that the Mt. Hope decision is controlling.
 
 
 4
 We think the cases are clearly distinguishable. Here not only did Dickey perform the same functions in the corporation that he had performed in the partnership, but the personnel remained the same, the corporation occupied the same plant as the partnership and continued to do the same kind of work. With one exception the employees who had worked for the partnership were employed by the corporation. We think these facts amply support the finding that the corporation was a continuance of the partnership. To the same effect are the holdings in this court of N. L. R. B. v. Colten, 105 F.2d 179, 183, and N. L. R. B. v. Fred P. Weissman Co., 170 F.2d 952, 954, which control decision here.
 
 
 5
 As to the unfair labor practices set forth by the Blacksmiths, ample evidence is presented supporting the decision of the trial examiner and the Board that such practices were indulged in against the Blacksmiths through a lockout, unilateral wage increases, and other coercive acts of petitioners. The important question in the case is presented by the fact that, by amendment made by the Regional Director of the Board, the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers (AFL), hereinafter called the "Boilermakers," was substituted for the Blacksmiths in the certification of election. The order of the Board finds that petitioners, hereinafter called the employer, refused to bargain collectively not only with the Blacksmiths but also with the Boilermakers as exclusive bargaining representative of the production and maintenance employees at its Lisbon, Ohio, plant. As to refusal to bargain with both unions the order is supported by the evidence. However, as to the Boilermakers, the order commands the employer to bargain with a union which did not file the charge and on the conceded facts was never chosen by the employees as their exclusive bargaining representative. The court thinks that under these circumstances the employer was under no obligation to bargain with the Boilermakers and that enforcement of this part of the order must be denied.
 
 
 6
 The question arises out of the following facts, which are uncontradicted: The employer, a partnership doing business under the trade name of Ohio Hoist and Manufacturing Company, was approached by the Blacksmiths, which claimed to represent all 13 production and maintenance employees at the Lisbon plant. The employer and the Blacksmiths agreed to a consent election, which was won by the union and on February 2, 1953, the Blacksmiths were duly certified as exclusive bargaining representative. Thereafter, between February 2 and July 7, 1953, various negotiations were carried on between the representatives of the Blacksmiths and the employer as to a proposed collective bargaining contract. During this time the principal acts found to be unfair labor practices, including the shutdown of the plant, incorporation of the partnership, and the unilateral wage increases, took place. At the hearing before the examiner a paper dated June 3, 1953, was produced purporting to be signed by eleven employees and stating that the signers wished to have the Blacksmiths discontinue negotiating a union contract with the company. The Trial Examiner found that this repudiation was due to the obstructive tactics of the employer. We do not discuss this feature of the case because of the decisive preliminary question whether the Regional Director by amending the certification of election can compel the employees to be represented by a union not of their own choosing.
 
 
 7
 On July 7, 1953, the Blacksmiths merged with the International Brotherhood of Boilermakers and Iron Ship Builders, forming The International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers (AFL). The Boilermakers and Ship Builders had a larger membership than had the Blacksmiths. Of the officers allotted to the Blacksmiths in the merger as their proportional share of official representation on a membership basis were three vice presidents out of a total of sixteen. (Boilermakers-Blacksmiths' Journal, Volume LXV, No. 9, September, 1953, cited and relied on by the Board.) On August 31, 1953, after the acts charged to constitute unfair labor practices had been performed, a motion to amend the certification of election and to substitute the Boilermakers was filed with the Regional Director and granted. Petitioners appealed to the Board and their appeal was denied. In its decision herein the Board approved without discussion the finding of the trial examiner that the Blacksmiths did not lose their identity as representatives of the employees by reason of the merger, that so far as the employer was concerned the situation represented only a "change of name."
 
 
 8
 The Board contends here that the finding of the Trial Examiner upon this point is a finding of fact and that the approval by the Board of the substitution of the Boilermakers for the Blacksmiths is binding in this court.
 
 
 9
 The question is squarely presented whether, by amendment of the certification of representation, the Regional Director is authorized to substitute as exclusive bargaining representative a union different from the one actually chosen by the men and certified. The Regulations of the Board, Series 6, as amended, Section 102.54, authorize the Regional Director to issue a certification of the results of the election and provide that the "rulings and determination by the regional director of the results thereof shall be final." The Agreement for Consent Election entered into by the employer provides that "the determination of the Regional Director shall be final and binding upon any question, including questions as to the eligibility of voters, raised by any party hereto relating in any manner to the election," and provides further that "rulings or determinations by the Regional Director in respect of any amendment of any certification resulting therefrom shall also be final." It is clear from this context that under the Regulations the authority of the Regional Director to amend a certification must relate to the election. But here the Regional Director certified as exclusive bargaining representative a union which had been in no way concerned with the election.
 
 
 10
 The Trial Examiner approved the action of the Regional Director upon the grounds above stated. The Board approved the Trial Examiner's report without discussion. In support of this ruling counsel for the Board points out that the employer, through The Cleveland Chain Company, a corporation in which petitioner Dickey was vice president, treasurer and general manager, negotiated with the Boilermakers after the merger and also that the individual who had negotiated for the Blacksmiths acted as agent for the Boilermakers after the merger. We think these circumstances have no bearing upon the controlling question. An employer cannot by dealing with a union constitute it the lawful representative of employees who have not chosen it to represent them. The history of the decisions of the Supreme Court of the United States as to company unions demonstrates this fact. Nor can the identity of the union agent who is negotiating with the employer decide which union is the exclusive bargaining agent of the men. The vote of the employees is the decisive factor in securing "that freedom of choice which is the essence of collective bargaining." International Ass'n of Machinists, etc., v. N. L. R. B., 311 U.S. 72, 79, 61 S.Ct. 83, 88, 85 L.Ed. 50.
 
 
 11
 Section 7 of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 157, provides that "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing * * *." This is the basic provision of the Labor Management Relations Act. Here the men voted for the Blacksmiths and the result was duly certified. They did not vote for the Boilermakers. No second election was held after that certified February 2, 1953. The fact that the union representative said he told the employees that merger proceedings were pending is immaterial. The employees had a basic statutory right to express their choice. It was expressed in favor of the Blacksmiths but not in favor of the Boilermakers.
 
 
 12
 Here it is conceded that another and different organization amalgamated with the Blacksmiths. In the merger the officers were divided between the constituent organizations proportionately according to membership. While the numbers are not given, many more individuals were members of the Boilermakers and Ship Builders than of the Blacksmiths, for when the offices were divided upon a basis proportional to membership three out of sixteen vice presidents were allotted to the Blacksmiths. (Boilermakers-Blacksmiths' Journal, supra.)
 
 
 13
 The Blacksmiths were a fraction only, although a substantial fraction, of the resulting membership in the Boilermakers.
 
 
 14
 Moreover, the official management of the new union was not confided to the Blacksmiths. They had only three vice presidents. The president and the secretary-treasurer and thirteen vice presidents were originally members of the Boilermakers. The Blacksmiths had complete control of the union which the employees joined. They had no control of the amalgamated union.
 
 
 15
 The Board treated this as a routine matter and did not mention it in its decision; but it is far from routine. The Regulations of the Board do not invest the Regional Director with such authority and, if so, they violate the express provision of 29 U.S.C., Supp. V, Section 157, 29 U.S.C.A. § 157.
 
 
 16
 Cases are cited claimed to hold contra. Cf., N. L. R. B. v. Franks Bros. Co., 1 Cir., 137 F.2d 989; Continental Oil Company v. N. L. R. B., 10 Cir., 113 F.2d 473; N. L. R. B. v. E. A. Laboratories, Inc., 2 Cir., 188 F.2d 885. Two of these antedate the Labor Management Relations Act. All of the cases are sharply distinguishable and not controlling.
 
 
 17
 Here the facts are undisputed and the law is plain. The men voted to bargain collectively through the Blacksmiths. They have never voted to bargain through a union the majority of whose members did not belong to the Blacksmiths, and whose official representation gives control to another organization than the Blacksmiths. The amendment of the certification of election by the Regional Director was unauthorized and the Board could not validate it by its approval.
 
 
 18
 The order of enforcement is modified in accordance with this opinion and as so modified the order is enforced.