457 F.2d 832
 79 L.R.R.M. (BNA) 2972, 67 Lab.Cas. P 12,554
 NATIONAL LABOR RELATIONS BOARD, Petitioner, and Sign Display
and Pictorial Artists and Allied Workers, Local
639, Brotherhood of Painters and Allied
Trades, AFO-CIO, Intervenor,
v.
CANTON SIGN COMPANY, Respondent.
 No. 71-1284.
 United States Court of Appeals,
Sixth Circuit.
 March 30, 1972.
 
 Robert A. Ginnasi, N. L. R. B., Washington, D. C., Eugene G. Goslee, Acting Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Howard C. Hay, Attys., N. L. R. B., Washington, D. C., on brief, for petitioner.
 Roy E. Browne, Akron, Ohio, Hershey, Browne, Wilson, Steel, Cook & Wolfe, Akron, Ohio, on brief, for respondent.
 Lawrence M. Oberdank, Cleveland, Ohio, Riemer & Oberdank, Cleveland, Ohio, of counsel, for intervenor.
 Before WEICK and CELEBREZZE, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.
 O'SULLIVAN, Senior Circuit Judge.
 
 
 1
 National Labor Relations Board seeks enforcement, and respondent Canton Sign Company (Canton) resists enforcement, of an Order of the Board entered February 28, 1969, directing respondent to bargain with intervenor, Sign Display and Pictorial Artists and Allied Workers, Local 639, Brotherhood of Painters and Allied Trades, AFL-CIO (the Union), as representative of Canton's employees. The Board's Order and its Trial Examiner's Decision are reported as 174 N.L.R.B. No. 133.
 
 
 2
 We deny enforcement.
 
 
 3
 At the times here involved, Canton Sign Company of Canton, Ohio, had five employees eligible for membership in Local 639. But neither Local 639 nor a predecessor, Local 89, had ever been certified as bargaining agent for Canton's employees; neither is there evidence that any of them had ever chosen to become a member of either of such Locals. A Regional Director and the Trial Examiner who made the decision before us, took the position that Canton had recognized Local 89 and Local 639 as representatives of its employees and was thereby obligated to continue to deal and bargain with Local 639 or be guilty of an unfair labor practice. The immediate background to the order before us was a strike, called by Intervenor Local 639 on April 8, 1968. It covered respondent's plant as well as the plants of two other Canton enterprises engaged in activities similar to those of respondent. The record before us is unclear as to just why the strike was called or why it ended. It was short lived. Except for one Thomas Franta, none of respondent's employees who participated in it ever asked for reinstatement, nor did they ever return to the employ of respondent. Thomas Franta, a brother of Edward A. Franta, respondent's president, was himself its vice-president. Because he did some work of like kind to that done by respondent's four other employees, he paid dues to Local 89 and Local 639, and was apparently considered a member. Except for Thomas Franta, who returned to work one day after the strike was called, the other employees of Canton, at a date not shown by the record, all went to work for other employers. Local 639 found new jobs for them.
 
 
 4
 Prior to and during the strike, meetings were had between representatives of the Union and respondent during which the Union sought to have the Company recognize it, and enter into a contract with it, as bargaining agent for Canton's employees. While the strike was in progress, the Company filed an unfair labor practice charge against the Union claiming that the picketing was a violation of Section 8(b) (7) (c), 29 U.S.C. Sec. 158(b) (7) (c) as an illegal effort to force the Company to recognize and bargain with Local 639. The Regional Director, however, refused to issue a complaint, asserting that Canton had already recognized Local 639 as bargaining agent for Canton employees. Upon the Company's appeal to the General Counsel, the Regional Director's decision was affirmed. No representation election, no card count, nor any other mechanism had ever been employed or directed for the purpose of making a reliable determination as to whether Local 639 was, in fact, the chosen representative of Canton's employees.
 
 
 5
 Returning to the background of this litigation, we recite that on March 31, 1964, Canton Sign Company entered into an agreement with Local 89 of Sign Display and Pictorial Artists and Allied Workers, Brotherhood of Painters and Allied Trades, AFL-CIO. It was there provided that each employee of Canton, after the first 30 days of his employment, or after 30 days duration of the contract, was required,
 
 
 6
 "[A]s a condition of employment become and remain members of the Union, to the extent of tendering or paying the amount of the uniform dues and initiation fees required by the Union of its members." (Emphasis supplied.)
 
 
 7
 The record is silent as to what negotiations led to this "union-shop" contract and as to whether any of Canton's employees had a part in whatever negotiations led to it.
 
 
 8
 The making of such a contract by a union and an employer without a majority of the involved employees having chosen the union as its bargaining agent would be illegal, and confers no right on the union. Section 8(a) (3) of the Act, 29 U.S.C. Sec. 158(a) (3). International Ladies' Garment Workers' Union v. National Labor Relations Board, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961); Lane Drug Co. v. NLRB, 391 F.2d 812, 820 (6th Cir. 1968); NLRB v. Pepsi Cola Bottling Co., 454 F.2d 5 (6th Cir. 1972).
 
 
 9
 The contract was to run to April 1, 1967, with annual renewals unless terminated by a 90 day advance notice. No contract had ever been made between Canton and Local 639, the charging party. The trial examiner, however, found that Local 639 had become the bargaining representative of Canton's people by reason of a merger between Local 89 and Local 639. In February, 1966, Local 639 sought to take over Local 89. Local 89 was a small organization covering three sign companies of Canton, Ohio, having a total of about 35 employees, five of whom worked for respondent. Local 639 was a large union covering eligible employees of sign companies throughout the entire State of Ohio and parts of Kentucky. On February 2, 1966, pursuant to notice to the members of Local 89, a meeting was held at which fifteen of the thirty-five members of Local 89 were present. A vote by secret ballot was taken and thirteen of the fifteen who were present voted for the merger. There was no evidence that any employee of Canton voted for the merger or was even present at this meeting. No notice was given to respondent Canton of such a plan, nor was it ever consulted as to whether it would be willing to substitute Local 639 for Local 89 as bargaining representative of its people. It learned of the merger later. It would be well at this point to emphasize that the burden of proving charged illegal conduct is on the General Counsel. NLRB v. Murray Ohio Mfg. Co., 326 F.2d 509, 513 (6th Cir. 1964); Sears, Roebuck & Company v. NLRB, 450 F.2d 56, 61-62 (6th Cir. 1971).
 
 
 10
 There is no evidence of any trouble between Canton and its employees over membership in Local 89, Local 639, or in any other union, nor as to who was to bargain for them. After the 1966 merger, Canton's employees paid their union dues to Local 639 which had taken over the assets and records of Local 89. It is a fair inference that this was a routine affair, obedient to the requirement of the 1964 contract and to the direction of the business agent of Local 639. There was no occasion for Canton to deal with Local 639 until, on January 17, 1967, it received a letter from Local 639 advising that it wished to discuss termination of the existing contract (with Local 89) "which will expire by its terms on April 1, 1967," and asked the company to meet with Local 639 to discuss "a replacement agreement which will become effective April 1, 1967." Canton replied that in view of the fact that neither the company nor the union had given notice of intention to terminate or change the existing contract with Local 89 "90 days prior to April 1, 1967" the existing contract would continue for one year until April 1, 1968. The company's response, however, concluded:
 
 
 11
 "However, if there is any specific problem or proposal which you wish us to consider with you, or any suggestion which is likely to improve our business prospects or increase employment, we shall be glad to hear further from you, looking to arrangements for a joint discussion."
 
 
 12
 Thereafter, on December 27, 1967, more than 90 days prior to April 1, 1968, the expiration date of the existing contract, Local 639-its letterhead identified its office as being in Cleveland, Ohio-asked that Canton meet with its representatives to discsuss "a replacement agreement." The company responded that,
 
 
 13
 "In order to expedite things, please present your proposal to us in writing at your earliest convenience."
 
 
 14
 Subsequently, negotiations were had looking to an eventual making of a contract between Canton and Local 639. During these negotiations, respondent company in no way sought to dissuade its employees from remaining, or becoming, members of Local 639. Meetings were held at which the union submitted proposed contracts. These proposals contained the same "union security" provision which had been in the expiring contract with Local 89. Notes appearing on such draft proposals indicate that respondent would likely have gone along with such a provision if total agreement was reached. There obviously were areas of disagreement, however, and respondent's employees, as well as the employees of the other two sign companies of Canton, Ohio, went on strike as hereinabove set out.
 
 
 15
 The order which the Board here asks us to enforce is bottomed on the union's charge that in April, 1968, after the strike had commenced, the respondent Company refused to continue bargaining with Local 639 as the representative of Canton's employees. In February, 1969, the Board found the respondent guilty of the charge and ordered Canton to bargain with Local 639. The Board's petition to us for enforcement was filed in April of 1971. This long interval was in part the consequence of some interim proceedings, discussed later.
 
 
 16
 The Board relies on decisions which have held that where a union has been certified, or has otherwise become the bargaining representative of the employees of a company, it is the duty of such company to bargain with that union and if it is ordered to do so following an unfair labor practice charge, it must continue to bargain with that union for a reasonable length of time-one year being found to be reasonable-notwith-standing that after the Board's order the Union loses its status as representative of the majority of the employees involved. NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); NLRB v. Warren Company, 350 U.S. 107, 76 S.Ct. 185, 100 L.Ed. 96 (1955); NLRB v. P. Lorillard Co., 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380 (1942); Franks Bros. v. NLRB, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020 (1944); Brooks v. NLRB, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954). This Circuit obeys such rule. McLean v. NLRB, 333 F.2d 84, 88-89 (6th Cir. 1964). The law announced in these cases is, of course, controlling if the facts here call for their application. They do not.
 
 
 17
 Without attempting exposition of all the facts of the above cases which distinguish them from the case at bar, we mention two factual elements common to all of them. First, the unions with whom the employers were ordered to bargain had, by election, card count, or otherwise been shown to be the chosen bargaining representatives of the accused's employees. Second, the involved employers had been shown to have an anti-union history and had been continuing in attempts to frustrate the unions' efforts to attain, or to retain, the status of legitimate bargaining agents. Both of these essentials are missing here.
 
 
 18
 In May of 1967 Local 639 had filed a petition with the Regional Director asking that it be certified as the bargaining representative of three Canton Sign Companies including the respondent. It was withdrawn, apparently because the current contract would not expire until April 1, 1968.
 
 
 19
 The Trial Examiner also concluded that joining the picket line by respondent's employees was proof that they had chosen Local 639 as their bargaining agent. We do not agree. Whatever may have been said by other courts in different contexts, we are not persuaded that the joining in the picket line by Canton's employees in a strike called by Local 639 constituted such local as a bargaining agent with whom Canton had to deal or be guilty of an unfair labor practice. The Board here cites several cases to support its Examiner's finding in the above regard. They are not in point. In NLRB v. National Seal Corporation, 127 F.2d 776 (2d Cir. 1942) we find this:
 
 
 20
 "He [the union representative] called a meeting of the employees that night at which they voted to strike the next day, which they did with substantial unanimity, putting forward five grievances of which one was the refusal to recognize the union." 127 F.2d at 777.
 
 
 21
 In NLRB v. Harris-Woodson Co., 4 Cir., 179 F.2d 720, is a factual recital:
 
 
 22
 "The facts are that following the organization of the union in August 1942, it [the union] was unanimously chosen as the bargaining representative at an election held shortly thereafter." 179 F.2d at 721. (Emphasis supplied.)
 
 
 23
 Other cited cases, NLRB v. I. Taitel & Son, 261 F.2d 1, 4 (7th Cir. 1958); NLRB v. Shurett, 314 F.2d 43, 44 (5th Cir. 1963); and NLRB v. Preston Feed Corp., 309 F.2d 346, 350 (4th Cir. 1962), just do not fit here.
 
 
 24
 After the strike commenced, further meetings were held between Canton management and the business agent of Local 639. Efforts to come to agreement continued. However, at a meeting held on April 19, 1968, the company representative then advised that "there was no need to meet unless we [Local 639] found out that we were the proper bargaining representative of the people at that shop, Canton Sign Company." Since that date no effort has been made to establish by election, by a card count, or by any other mechanism, that Canton's employees, those that went on strike and those that replaced them, desired to have Local 639 bargain for them.
 
 
 25
 On May 27, 1968, the business agent of Local 639 filed the unfair labor charge which is here involved. The charge was that since April 15, 1968, respondent Canton Sign had "refused to bargain collectively with * * * Local 639." A complaint was issued July 12, 1968; a hearing thereon held on September 12, 1968; a Trial Examiner's decision was announced on November 25, 1968; on February 28, 1969, the Board affirmed the Examiner's decision and ordered Canton to bargain with Local 639. Notwith-standing what had preceded this order, the company posted the notice required by it and expressed its willingness to further negotiate with Local 639. On June 26, 1969, the Acting Regional Director wrote to the company and the union as follows:
 
 
 26
 "The Respondent having satisfactorily complied with the affirmative requirements of the Order of the National Labor Relations Board in the above-entitled case and the undersigned having determined that Respondent is also in compliance with the negative provisions of the Order, the file in this matter is hereby closed. The closing is conditioned upon continued observance of the Board's Order, and subsequent violations may become the basis of further proceedings despite the formal closing of the case."
 
 
 27
 Correspondence was had looking to further bargaining sessions. In the meantime, the strike of April, 1968, had been completely abandoned. On May 23, 1969, in response to a letter from Local 639 respondent expressed its willingness to meet with the Local's representatives. The Local did not respond to this until July 23, 1969. A meeting was finally had in August of 1969. The Company then advised Local 639 that it would not bargain further until the Local established its right to speak for Canton's employees. Local 639 then filed a new charge on October 16, 1969, charging that since May of 1969 Canton was refusing to bargain with Local 639. A hearing was had on this charge and after a hearing on February 24, 1970, the trial examiner issued a decision dismissing the complaint. He said:
 
 
 28
 "The Company contends that it complied with the Board's order in Case 8-CA-5039 because it posted the notices provided for, and offered to meet with the Union. The Union did not timely respond to the Company's offer to meet. When the Union later sought a meeting significant changes had taken place: the strike had come to an end and none of the striking employees requested reinstatement. Respondent argues that in the circumstances it is entitled to insist upon the Union demonstrating its majority before the Company should be required to recognize and to bargain with the Union. It is unnecessary to meet this argument because I shall recommend that the complaint be dismissed for other reasons." (Emphasis supplied.)
 
 And under Conclusions of Law, he said:
 
 29
 "The Company has not engaged in any unfair labor practice which warrants the issuance of a remedial order."
 
 
 30
 It should be observed, however, that the dismissal was the product of the Examiner's conclusion that the original order-the one before us here-was still in force.
 
 
 31
 "Furthermore, any remedy ordered in this case 'would add nothing of substance to the remedy provided in the earlier case.' New Enterprise Stone and Lime Co., Inc., 176 NLRB No. 71. No useful purpose would be served by issuing another like order."
 
 
 32
 On October 31, 1970, the Board affirmed its examiner's dismissal of the second complaint, but did so upon its holding that the original order of February, 1969, was still in effect and was sufficient to require Canton to continue to bargain with Local 639 for a reasonable time. No effort, however, was made by Local 639 to bargain with the Company after the Union filed its second charge on October 16, 1969, nor was any effort made by Local 639 to obtain the membership of any of Canton's employees. The following examination of the then agent for Local 639 occurred during the hearing on the second charge:
 
 
 33
 "Trial Examiner: May I interrupt just a moment. Is it your testimony that Local 639 does not represent any employees currently working for the Company?
 
 
 34
 "The Witness: Correct.
 
 
 35
 "Trial Examiner: Does it represent any employees who formerly worked for the Company who wished to return to the Company but are refusing to do so because they are participating in a strike against the Company?
 
 
 36
 "The Witness: Not any more.
 
 
 37
 "Q. (By Mr. Rector) Well, isn't it a fact that your Union took those pickets and put them to work with another Company?
 
 
 38
 "A. That's right.
 
 
 39
 ******
 
 
 40
 * * *
 
 
 41
 "Trial Examiner: Who is striking?
 
 
 42
 "The Witness: No one, but the strike is not abandoned as far as our Local is concerned. We haven't concluded an agreement, so you can't say the strike is over. It is over when an agreement is signed.
 
 
 43
 "Trial Examiner: What former employees are concerned with the strike now?
 
 
 44
 "The Witness: None. They replaced them after the strike.
 
 
 45
 "Trial Examiner: But, there are none?
 
 
 46
 "The Witness: No."We have reviewed the facts and proceedings at the above, probably undue, length believing that their recital provides clear distinction of this case from the authorities relied upon by the Board's General Counsel. Aware that there was no evidence that any employee of Canton had ever chosen Local 639 as its bargaining agent, the Board contends that by reason of the merger of Local 89 and Local 639 and the Company's dealing with the latter while its original contract with Local 89 was still in force, Local 639 somehow became the representative of Canton's employees. The basis of this claim is that Local 89 was merged into Local 639. There is no evidence that any employee of Canton attended the meeting to consider the merger. Only 15 of the 35 members of Local 89 were present at the meeting and 12 of the ones who were present voted in favor of the merger. Our decision of Union Carbide & Carbon Corp. v. NLRB, 244 F.2d 672 (1957), is cited as supporting the binding force of the merger on Canton. We disagree. In Union Carbide a union which had won an election and been certified as bargaining agent, was then consolidated with another union. Upon a relevant hearing, the Board had found the consolidated union had succeeded to the status of the constituent unions. We there said, however:
 
 
 47
 "In the instant case, there were no changes in the membership or officers of the local, or in its day-to-day relationships with the company. The Gas Workers were of comparable size with the Oil Workers and had an equal voice in deliberations and in the division of officers. In short, the consolidated group was intended to function as a continuation of its two constituent unions, so that the consolidation would not impair any of their certifications. For these reasons, our decision in the Dickey case is not controlling here." 244 F.2d at 673. (Emphasis supplied.)
 
 
 48
 This is not this case where respondent Canton's five employees were but a small fraction of the total membership of Local 639 which at the time of the second hearing covered "the complete state of Ohio and parts of Kentucky." Local 89 covered three employers in the City of Canton, Ohio. In Union Carbide, supra, we distinguished our earlier case of Dickey v. Nat'l Labor Relations Bd., 217 F.2d 652 (6th Cir. 1954), by saying:
 
 
 49
 "There, the members of the certified unit constituted only a fraction of the merged group and had no control over it." 244 F.2d at 673.
 
 
 50
 Our case of Dickey v. NLRB clearly fits the case at bar. We said there:
 
 
 51
 "An employer cannot by dealing with a union constitute it the lawful representative of employees who have not chosen it to represent them." 217 F.2d at 655.
 
 
 52
 The Board's examiner found that respondent's employees had chosen Local 639 as their agent because they paid dues to it. After the so-called merger meeting, Local 639 took over and assumed to speak for all of the former members of Local 89. Under the "union-shop" agreement with Local 89, membership in the union was required only,
 
 
 53
 "[T]o the extent of tendering or paying the amount of the uniform dues and initiation fees required by the Union of its members."
 
 
 54
 We do not consider that paying dues to Local 639 can, under the circumstances here, be held to be a selection of that Local as the agent of each of Canton's employees. The first examiner held that Canton had recognized and accepted Local 639 as the representative of its employees by discussing a possible new contract upon the expiration on April 1, 1968, of its old contract with Local 89. In dismissing the Company's charge of illegal picketing, the Regional Director said:
 
 
 55
 "[T]he evidence disclosed that the Employer, over the period of approximately two years, has recognized and bargained with Local 639 by, inter alia, adjusting an oral grievance presented by a business representative of Local 639, and submitting at least two bargaining proposals to Local 639 during the course of collective bargaining negotiations in 1968, * * *."
 
 
 56
 The trouble with this argument is that neither the Company nor Local 639 had the right to choose the bargaining representative of Canton's employees. These employees, or the majority of them, are the ones, and the only ones, who had the right to select their bargaining agent. The most cogent circumstance that distinguishes this case from those relied on by the Board and its General Counsel resides in the fact that there is not a scintilla of evidence that Canton ever tried to dissuade any of its employees from being or becoming members of Local 639, or any other Local. This applies to its five employees who joined in the strike, as well as those who replaced them and continued to work for the company after the strikers had been provided jobs with other employers by Local 639. No effort has ever been made by Local 639 to organize the employees who came to work for Canton after the strike. While the Board, in the exercise of its powers, may order a company with a history of interfering with the right of its employees to organize for their mutual aid and protection, to desist from such interference and to recognize a union of the employees' choice, or one that is seeking to be chosen as such representative, neither the Board, an employer, or a union has any right to make such a choice for a group of employees. In International Ladies' Garment Workers' Union v. National Labor Relations Board, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961), the Supreme Court made clear that it is a violation of the rights of a company's employees for a union and a company to make a contract recognizing a union as the exclusive representative of the involved employees if a majority of such employees had not chosen the union as such agent. The Court there said:
 
 
 57
 "The Board found that by extending such recognition, even though done in the good-faith belief that the union had the consent of a majority of employees in the appropriate bargaining unit, the employer interfered with the organizational rights of his employees in violation of Sec. 8(a) (1) of the National Labor Relations Act and that such recognition also constituted unlawful support of a labor organization in violation of Sec. 8(a) (2). In addition, the Board found that the union violated Sec. 8(b) (1) (A) by its acceptance of exclusive bargaining authority at a time when in fact it did not have the support of a majority of the employees, and this in spite of its bona fide belief that it did. Accordingly, the Board ordered the unfair labor practices discontinued and directed the holding of a representation election." 366 U.S. at 732-733, 81 S.Ct. at 1604.
 
 
 58
 Idem, Lane Drug Co. v. NLRB, 391 F.2d 812, 820 (6th Cir. 1968); and NLRB v. Pepsi Cola Bottling Co., 454 F.2d 5 (6th Cir. 1972). There are, of course, the cases which hold that even though, subsequent to an order to bargain, the union loses its status as representative of the involved employees, the employer must continue to bargain for a reasonable time. NLRB v. Warren Company, 350 U.S. 107, 76 S.Ct. 185, 100 L.Ed. 96 (1955); NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); NLRB v. P. Lorillard Co., 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380 (1942); Franks Bros. v. NLRB, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020 (1944); Brooks v. NLRB, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954). This Circuit has followed this rule. McLean v. NLRB, 333 F.2d 84, 88-89 (6th Cir. 1964).
 
 
 59
 None of the foregoing decisions fit this case. In each of them the involved union had been certified as, or found to be, the legitimate bargaining representative of the involved employees after an election or valid card count; in each the accused company had carried on an antiunion campaign before and after the certification, and after the Board's order. These facts are not present here. In none of them was the union entirely without members among the involved company's employees at the time of the refusal to bargain and at the time of the Board's order. Such, however, is the situation in the case at bar.
 
 
 60
 We believe that what we do here is consonant with the views expressed in Clark's Gamble Corporation v. NLRB, 407 F.2d 199 (6th Cir. 1969), and in our reconsideration of that case after remand by the United States Supreme Court. Clark's Gamble Corporation v. NLRB, 422 F.2d 845. The Supreme Court in NLRB v. Clark's Gamble Corp., 396 U.S. 23, 90 S.Ct. 197, 24 L.Ed.2d 143 (1969), directed that we further consider our decision "in the light of NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547." In our first decision we emphasized the likely turnover of the company's employees in the interim between the date of the unfair labor practice charge in early 1965 and the Board's order in November, 1967. We said:
 
 
 61
 "[T]he case is remanded to the National Labor Relations Board for a determination as to whether in view of the passage of time since the entering of its Order that portion thereof requiring petitioners to bargain collectively with Local 1262, Retail Clerks International Association, AFL-CIO is still appropriate. Specifically the Board is enjoined to determine the extent to which there has been a change in the identity of the employees since the time demand for recognition was made. If such change is found to have been substantial it is directed that the Board cause a representation election to be conducted." 407 F.2d at 202.
 
 
 62
 In our opinion following remand, Clark's Gamble Corporation v. NLRB, supra, we said:
 
 
 63
 "The thrust and philosophy of the Act is that employees be represented by a bargaining agent of their choice and in this situation which fails to reflect the selection of an agent by the employees sought to be affected, and where the period for personnel turnover has been extended by Board-occasioned delay, we conclude that it would be contrary to the intent of the Act to order enforcement." 422 F.2d at 847. (Emphasis supplied.)
 
 
 64
 We concluded that Gissel Packing did not require a different result and again remanded the matter to the Board. The Supreme Court denied certiorari to our final decision. 400 U.S. 868, 91 S.Ct. 100, 27 L.Ed.2d 108. We do not believe that our later decision in G.P.D., Inc. v. NLRB, 430 F.2d 963, impaired the precedential standing of either of our decisions in the Clark's Gamble case. In G.P.D., we were dealing with a situation where an anti-union employer was trying, by illegal conduct, to interfere with its employees' free choice of a bargaining representative. Such is not this case. Because of our expressed view that Local 639 had not become the bargaining agent of Canton's Employees before the strike of April 8, 1968, and the fact that at no time thereafter were any of Canton's employees members of such Local, we feel it right to deny enforcement of the Board's order. If the Board's and its Trial Examiner's conclusion that Local 639 was the chosen bargaining agent of Canton's employees prior to, or after, April 1, 1968, was a finding of fact, we hold that such finding is not supported by substantial evidence on the record considered as a whole. 29 U.S.C. Sec. 160(c); Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).
 
 Enforcement is denied.[1]
 CELEBREZZE, Circuit Judge (dissenting):
 
 65
 I respectfully dissent.
 
 
 66
 The majority bases its decision to deny enforcement on two alternative grounds. First it holds the Board erred in finding that Canton violated Sec. 8(a)(5) of the Act by refusing to bargain with Local 639 in April, 1968. Second, it rules that whether or not the original 8(a) (5) finding was correct, the Board erred in reaffirming the validity of its bargaining order in the face of evidence that Local 639 had lost all employee support by 1969.
 
 
 67
 I am not persuaded that the majority has correctly analyzed the relevant facts or applied the proper law in reaching the conclusions that it has.
 
 
 68
 Initially I must indicate that under all the circumstances of this case I believe it inappropriate for this Court to review the Board's finding that an 8(a) (5) violation was committed by Canton. Though Canton challenged the Trial Examiner's finding on this point before the Board, it has not raised any question as to the accuracy of that finding before us, either in its brief or on oral argument. It has instead argued that events occurring subsequent to the issuance of the Board's decision and bargaining order make enforcement of that order improper at this time. Such a posture in this Court strongly indicates abandonment of any challenge to the correctness of the finding that an unfair labor practice had, in fact, been committed by Canton.
 
 
 69
 Where, on a petition for enforcement, an employer has failed to challenge an unfair labor practice charge on the merits, but has instead raised other objections to the enforcement of the resulting Board order, this Court has consistently refused to review the Board's finding as to the existence of the violation itself. See N.L.R.B. v. Tennessee Packers, Inc. Frosty Morn Division, 344 F.2d 948 (6th Cir. 1965); N.L.R.B. v. Kentucky Utilities Co., 182 F.2d 810, 814 (6th Cir. 1950); cf. Mid-Southern Foundation v. Commissioner of Internal Revenue, 262 F.2d 134, 139 (6th Cir. 1958) cert. denied, 359 U.S. 991, 79 S.Ct. 1120, 3 L.Ed.2d 979 (1959); Viles v. Commissioner of Internal Revenue 233 F.2d 376, 379 (6th Cir. 1956).
 
 
 70
 Application of this rule of abandonment is particularly appropriate here where failure to apply it forces the Court to consider difficult and relatively unexplored questions of labor law without the guidance which briefs on the issue might be expected to provide.
 
 
 71
 The majority finds that a Sec. 8(a) (5) violation was not proven because general counsel failed to establish that Local 639 had the support of a majority of Canton's employees at the time of the April 1968 refusal to bargain. General counsel introduced evidence that Local 89 of the Sign Display and Pictorial Artists International had, prior to February, 1966 been acknowledged by all parties to be the majority representative of Canton's employees.[1] It was also shown that pursuant to a notice sent to all 35 Local 89 members (including Canton's five employees) an election was held among the Union's membership to determine whether or not a merger with Local 639 should be effected. By a 13-2 vote the Local 89 members approved the merger in February, 1966. As the majority correctly notes, the identity of the voters is not known and available documents and testimony make it impossible to determine whether a majority of Canton's unit employees (all members of Local 89) voted in favor of the merger.
 
 
 72
 Normally there is a presumption of continuing majority status for a union and such presumption is not destroyed when a proper merger of local unions takes place. See Union Carbide & Carbon Corp. v. N.L.R.B., 244 F.2d 672 (6th Cir. 1957); Retail Clerks International Association v. N.L.R.B., 125 U.S.App.D.C. 389, 373 F.2d 655, 657 (1967). In declining to apply that presumption here, where the Union membership at large has voted for a merger, the majority is necessarily holding that a merger between two local unions affiliated with the same International properly preserves the representative status of the constituent locals only where each bargaining unit represented by the locals holds separate elections on the merger issue and separately approves the merger.
 
 
 73
 The majority offers no relevant authority to support this position, nor does it offer any compelling reasons why we should reject the Board's apparent view that the opportunity for full participation by all unit members in a general merger vote is sufficient to warrant continued representation status for the newly created Local. See Retail Clerks International v. N.L.R.B., supra.
 
 
 74
 The only case cited by the majority to justify the heavy burden it would place upon merging unions is Dickey v. N.L.R.B., 217 F.2d 652 (6th Cir. 1954). That case is easily distinguishable from the present one. In Dickey two different International Unions were merged without any vote at all. Under those circumstances this court refused to find that workers who had originally voted for representation by the Blacksmith's Union could be presumed to have acquiesced in a merger making a union dominated by Boilermakers their authorized bargaining representative. The Court of Appeals for the District of Columbia had no difficulty in distinguishing Dickey when faced with a situation remarkably similar to our own. Retail Clerks Internation v. N.L.R.B., supra.
 
 
 75
 That D.C. Circuit case supplies direct support for the position apparently adopted by the Board here and suggests that a more careful consideration of the rule of law set out by the majority is in order. In Retail Clerks International the Court of Appeals enforced a bargaining order growing out of a Sec. 8(a) (5) violation. It rejected the Company's defense that mergers had destroyed the presumption of continuing union majority status, although there, as here, the merging union represented employees of more than one employer and no showing had been made that a majority of the workers in the individual bargaining units had separately approved the merger, 373 F.2d at 657; see also findings of fact made by the Trial Examiner and adopted by the Board and the Court of Appeals, 154 N.L.R.B. 1197 at 1251 (1965).
 
 
 76
 While I do not suggest that the prerequisites for a valid merger and carryover of bargaining representative status set out by the majority are necessarily incorrect, I do have doubts about their wisdom, especially in light of the contrary policy implicitly supported by the expert body, the National Labor Relations Board. I believe it inappropriate to reach the difficult issue posed by the merger questions and to establish a rule of law for this Circuit when the Company has abandoned its challenge to the Board's findings on the matter. See N.L.R.B. v. Tennessee Packers; N.L.R.B. v. Kentucky Utilities Co., supra.
 
 
 77
 Even overlooking Canton's failure to attack the Board's finding that a Sec. 8(a) (5) violation had been committed and considering that finding on its merits, I believe there is substantial evidence on the record as a whole to support the Board's decision.
 
 
 78
 Certainly if the view of the merger-representation question put forth by the D.C. Circuit in Retail Clerks International is accepted, Local 639 adequately established its majority status. Even apart from the merger, however, I believe that the evidence presented to the Board demonstrates that Local 639 had such status at the time of the April, 1968 refusal to bargain and that Canton was aware of such status.
 
 
 79
 The Supreme Court has recognized that a union can establish majority status "by other means [than Board supervised elections] under the unfair labor practice provision of Sec. 8(a) (5)-by showing convincing support, for instance, by a union called strike or strike vote. . . ." NLRB v. Gissel Packing Co., 395 U.S. 575, 597, 89 S.Ct. 1918, 1930, 23 L.Ed.2d 547 (1969). Here every member of the unit went out on strike when such strike was called by Local 639.[2] Contrary to the majority's suggestion such support has itself been adequate to demonstrate representative status. See, for example N.L.R.B. v. Shurett, 314 F.2d 43 (5th Cir. 1963); cf. N.L.R.B. v. Gissel Packing Co., supra. Here, however, additional facts make even clearer the union's representative position. All employees paid dues to Local 639 after the merger with Local 89 was accomplished. The majority terms it a "fair inference" that these payments, continued for over a year and a half, were merely "routine," given the union shop arrangement in effect. That may be, but this Court may not choose between two reasonable inferences. N.L.R.B. v. Challenge-Cook, 374 F.2d 147, 152 (6th Cir. 1967). The Board's inference that the continuation of dues payments represented a show of allegiance to Local 639 was a reasonable one.
 
 
 80
 Canton itself treated Local 639 as the lawful successor to Local 89 and majority representative at all times prior to the April, 1968 refusal to bargain. Without any employee opposition whatever it dealt with grievances raised by Local 639, discussed proposed new contract terms with that Local and informed the Union of routine personnel changes. In opposing a certification election for a proposed new multi-employer unit, Canton wrote the National Labor Relations Board admitting that "We recognize Local 639 and the International."
 
 
 81
 Canton's conduct cannot, as the majority correctly notes, be used by a fact finder to create the requisite support for the union where such support did not exist. Canton's open dealings with the Union in the two years preceding the Company's refusal to bargain and the absence of any employee opposition to such dealings, however, provide persuasive confirmation of the other evidence pointing toward the existence of majority support.
 
 
 82
 I reiterate my conviction that the Board's findings of a Sec. 8(a) (5) violation is not properly before this Court. Even assuming it appropriate to consider such question, however, it is my belief that substantial evidence on the record as a whole supports the Board's findings that Local 639 was the majority representative of Canton's employees in April, 1968 and that the Company's refusal to bargain with the Union violated Sec. 8(a) (5) of the Act.
 
 
 83
 The second ground relied upon by the majority in denying enforcement is that the Union's admitted loss of majority status in 1969 ended any bargaining obligation Canton may have had-even if the Board's issuance of a bargaining order was initially correct. This issue was properly before us.
 
 
 84
 The majority recognizes, as it must, the long-established proposition that loss of majority status subsequent to the commission of an unfair labor practice does not itself bar enforcement of a bargaining order. See Franks Bros. v. N.L.R.B., 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020 (1944); N.L.R.B. v. Mexia Textile Mills, Inc., 339 U.S. 563, 70 S.Ct. 833, 94 L.Ed. 1067 (1950); N.L.R.B. v. Warren Company, 350 U.S. 107, 76 S.Ct. 185, 100 L.Ed. 96; N.L.R.B. v. Lynair, Inc., 380 F.2d 286 (6th Cir. 1967); G.P.D., Inc. v. N.L.R.B., 430 F.2d 963 (6th Cir. 1970) cert. denied, 401 U.S. 974, 91 S.Ct. 1193, 28 L.Ed.2d 323 (1971). It concludes that the rule is inapplicable here for a number of reasons, each of which I shall consider.
 
 
 85
 First, the majority places great stress on the need for the Union's original representative status to be demonstrated by an election or "valid card count" if the Frank Bros. rule is to be applied. These are not the only acceptable means of demonstrating majority support. See Gissel, supra. As I have indicated, I believe Local 639 has properly been shown to be the representative of Canton's employees as of April, 1968.
 
 
 86
 The majority also seeks to distinguish Frank Bros. and the cases which follow it on the grounds that all of those decisions involved employers with longstanding and widespread anti-union policies, a circumstance absent here in the majority's view. No case dealing with the Frank Bros. rule has ever specifically required the presence of such pattern or evaluated the recurrent nature of the unfair labor practices in question so as to suggest that a certain level of repetitiveness was required before the Franks rule could be appropriately applied. In several of the cases following the rule there is little or no evidence of any long-term anti-union practices. The majority offers no explanation of why such a pattern of previous anti-union conduct should be required before the Franks rule is to be applied. This omission is significant, for I believe that such an explanation cannot be supplied. The Franks rule is designed to prevent "employers [from] profit[ing] from their own wrongful refusal to bargain." Frank Bros. v. N.L.R.B., supra, 321 U.S. at 704, 64 S.Ct. at 818. The employer profits from his own wrongdoing and so encourages further misconduct by other employers whether he has followed a consistent anti-union policy or whether his bad faith refusal to bargain is part of a newly formed design.
 
 
 87
 The only potentially persuasive objection to the imposition of a bargaining order in the Frank Bros. type situation is the fear that the present majority of unit employees will be denied a total free choice as to bargaining representative for the duration of the bargaining order. This would seem to be the underlying rationale of the majority's stress on the present absence of any union members from the ranks of Canton's employees.[3]
 
 
 88
 The Supreme Court has considered such objection in general in Frank Bros. and similar cases and rejected it, holding that the temporary nature of the bargaining order merely insures that a "bargaining relationship once rightfully established [is] given a fair chance to succeed." Frank Bros., supra at 705-706, 64 S.Ct. at 819. It stressed that after the expiration of a "reasonable period" (now usually held to be one year) employees could seek to change their representative or to dispense with a representative entirely. It thus found the imposition on employee rights to be within acceptable limits.
 
 
 89
 This conclusion is equally applicable whether the union in question falls short of majority status by a single vote or as here, has lost all its original adherents. In each case the will of the present majority of workers is temporarily set aside in the interests of their ultimate freedom of choice and the deterrence of future employer misconduct. In neither case is the union likely to be able to impose any obligation on individual employees unless it can convince a skeptical employer that its representation efforts have won such popularity among those employees as to make expedient the signing of a collective bargaining agreement. In each case the union is allowed but a limited time to achieve employee support and restore itself to the position it held before the employer's commission of the unfair labor practices; and in both cases the employees may, at the end of that period, seek to initiate proceedings which will remove the union as the bargaining representative. See 29 U.S.C. Sec. 159(c).
 
 
 90
 In G.P.D., Inc. v. N.L.R.B., 430 F.2d 963 (6th Cir. 1970) this Court recognized that the actual number of union adherents present in the unit at the time enforcement of a bargaining order is sought is inconsequential. There we enforced a bargaining order where but one of eight original union men remained in the unit. In a number of other cases where all union adherents had been replaced at the time enforcement was sought, other courts have granted the petition for enforcement. N.L.R.B. v. Andrew Jergens Co., 175 F.2d 130, 134 (9th Cir. 1949) cert. denied 338 U.S. 827, 70 S.Ct. 76, 94 L.Ed. 503, reh. den. 338 U.S. 882, 70 S.Ct. 156, 94 L.Ed. 541 (1949); Sakrete of Northern California, Inc. v. N.L.R.B., 332 F.2d 902. (9th Cir. 1964) cert. den. 379 U.S. 961, 85 S.Ct. 649, 13 L.Ed.2d 556, reh. den. 380 U.S. 926, 85 S.Ct. 883, 13 L.Ed.2d 814; N.L.R.B. v. Ozark Motor Lines, 403 F.2d 356 (8th Cir. 1968).
 
 
 91
 The majority relies heavily on the decisions of this Court in Clark's Gamble Corp. v. N.L.R.B., 407 F.2d 199 (6th Cir. 1969) vac. 396 U.S. 23, 90 S.Ct. 197, 24 L.Ed.2d 143 (1969), on rem 422 F.2d 845 (6th Cir. 1970), cert. denied 400 U.S. 868, 91 S.Ct. 100, 27 L.Ed.2d 108 to support its position that the special circumstances of this case make enforcement inappropriate here notwithstanding Frank Bros. and similar cases.
 
 
 92
 I believe that our decisions in Clark's Gamble turned on the peculiar facts of that case;[4] it was my impression that subsequent decisions of this Court intended to narrowly limit the applicability of Clark's Gamble. See G.P.D., Inc. v. N.L.R.B., 430 F.2d 963, 964 (6th Cir. 1970) cert. denied 401 U.S. 974, 91 S.Ct. 1193, 28 L.Ed.2d 323; N.L.R.B. v. Lou DeYoung's Market Basket, 430 F.2d 912, 915 (6th Cir. 1970). To the extent that the decision in Clark's Gamble is extended to cover the present situation I believe that it is in conflict with Frank Bros., N.L.R.B. v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962), and other Supreme Court cases and cannot control our decision.[5]
 
 
 93
 In general the Board's determination of the appropriate remedy for violations of the Act is entitled to "special respect" from the Courts. N.L.R.B. v. Mink Dayton, Inc., 426 F.2d 255, 256 (6th Cir. 1970) cert. denied, 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59 (1970); cf. N.L.R.B. v. Gissel Packing Co., 395 U.S. at 612 n. 32, 89 S.Ct. 1918 (1969). This is especially true when, as here, the Board has specifically reaffirmed its faith in the correctness of the remedy after consideration of events occurring subsequent to the time the order was originally issued.
 
 
 94
 The circumstances of this case do not seem to me to allow the Court to reject the Board's finding that a violation of the Act occurred and that a bargaining order was and is the most effective means of dealing with Canton's refusal to bargain. Accordingly I would enforce the Board's order.
 
 
 
 [1]
 The dissenting opinion argues that the question whether Local 639 had ever been selected by Canton's employees as their bargaining agent is not before us. This is so, it is argued, because one of the issues set out in respondent's brief is,
 "Whether the Court should enforce the Board's order of February 28, 1969, in view of the Union's subsequent loss of its majority and the delay in initiating enforcement proceedings."
 We do not read such statement as eliminating the question of whether Local 639 ever had a majority of Canton's employees as its members.
 The matter now before us began with the Board's petition to enforce its order of February 28, 1969, and its beginning brief stated as the sole and only issue involved:
 "Whether substantial evidence on the record as a whole supports the Board's finding that the Company refused to bargain with Local 639 in violation of Sections 8(a) (5) and 8(a) (1) of the Act."
 Recognizing the essentiality of a finding that Local 639 had at sometime become the bargaining agent of Canton's employees, the Board's brief at some length argued against Canton's contention that Local 639 had never attained such status. In addition to arguing that Local 639 had lost its majority status, if it ever had it, Canton joined the Board in setting out in its brief as a critical issue:
 "Whether the Board properly found the Company violated Sections 8(a) (1) and 8(a) (5) by refusing to recognize and bargain collectively with the Union."
 In the proceeding before the Board and its Examiner, Canton at all times vigorously contended that Local 639 had never been its employees' bargaining agent. In the proceeding before us Canton is not an appellant. The Board carries the burden of persuading this Court that its quite tardy request for enforcement should be granted. In NLRB v. Ogle Protection Service, Inc., 375 F.2d 497 (6th Cir. 1967) where the Board asked us to enforce its order, we said:
 "The scope of our review is limited to determining if the record contains substantial evidence to support the findings of the Board. Section 160(e), Title 29, U.S.C.; Universal Camera Corporation v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; National Labor Relations Board v. Denver Bldg. & Const. Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284." 375 F.2d at 500.
 In NLRB v. Checker Cab Company, 367 F.2d 692, (6th Cir. 1966), we characterized our relevant obligation as follows:
 "Having the obligation to make an independent review of the whole record (Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951)), we present the facts we glean on the dispute here involved, first from the point of view of respondents and then from that of the NLRB." 367 F.2d at 694.
 Whatever may have preceded the 1968 strike, it is undisputed that Local 639 lost its status (if it ever had such) immediately thereafter. To enforce the order before us would require that now, almost four years after Local's loss of such status, all of Canton's employees must accept this Union as their spokesman and bargaining agent. Involved here are not only the rights and duties of this union and this company, but primarily the rights of the employees who will be controlled by what we do. Respectfully we assert that to here grant enforcement would do violence to the purpose of the Act.
 "The remedial purposes of the Act are quite clear. It is aimed, as the Act says (Sec. 1, 29 USCA Sec. 151) at encouraging the practice and procedure of collective bargaining and at protecting the exercise by workers of full freedom of association, of self-organization and of negotiating the terms and conditions of their employment or other mutual aid or protection through their freely chosen representatives." Republic Steel Corporation v. NLRB, 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6, 9-10 (1940). (Emphasis supplied.)
 In NLRB v. Brown Lumber Co., 336 F.2d 641 (6th Cir. 1964), we said:
 "The National Labor Relations Act is remedial rather than punitive and contemplates protection of public rights which it creates and defines. Republic Steel Corp. v. N.L.R.B., 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6 (1940); Consumers Power Co. v. N.L.R.B., 113 F.2d 38 (C.A. 6, 1940)." 336 F.2d at 644.
 Whatever the emphasis of respondent's brief, the Board's order should not be enforced.
 
 
 [1]
 Canton never disputed Local 89's majority status at any point in the course of these proceedings. There was no reason for general counsel to introduce evidence as to the manner in which Local 89 first demonstrated its majority support. The suggestion offered at several points in the majority opinion, that Local 89 may itself not have been a proper employee representative is misleading
 
 
 [2]
 Canton Vice President Franta, himself a union member, did go out on strike, but returned to work after one day; all other employees remained on strike
 
 
 [3]
 The majority also suggests that Frank and similar cases may be distinguished because here and not in those cases the union was "entirely without members . . . at the time of the refusal to bargain." This distinction fails because it is based on a clear misreading of the facts of the present case which show that all Canton unit employees were Union members at the time of the bargaining refusal
 
 
 [4]
 In Clark's Gamble the Court denied enforcement to a bargaining order growing out of an alleged 8(a) (1) violation, the proof of which violation was so weak as to lead this Court to indicate that it would not have found a violation were the matter before it de novo. 407 F.2d 199, 201. A delay of over 34 months, traceable solely to administrative difficulties within the N.L.R.B. allowed a situation to develop where substantial employee turnover-and loss of union majority status-seemed likely
 The mere fact that the violation in question was an 8(a) (1) rather than an 8(a) (5) refusal to bargain (for which a bargaining order has been held to be a uniquely appropriate remedy, N.L.R.B. v. Flomatic Corp., 347 F.2d 74, 79 (2d Cir. 1965)) may explain the Court's reluctance to enforce the Board's order.
 
 
 [5]
 In Katz, the Supreme Court noted:
 "The Company urges that, because of the lapse of time between the occurrence of the unfair labor practices and the Board's final decision and order, and because the union was repudiated by the employees subsequently to the events recounted in this opinion, enforcement should be either denied altogether or conditioned on the holding of a new election to determine whether the union is still the employees' choice of a bargaining representative. The argument has no merit. Franks Bros. Co. v. National Labor Relations Board, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020; National Labor Relations Board v. P. Lorillard Co., 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380; National Labor Relations Board v. Mexia Textile Mills, Inc., 339 U.S. 563, 568, 70 S.Ct. 833, 94 L.Ed. 1067. Inordinate delay in any case is regrettable, but Congress has introduced no time limitation into the Act except that in Sec. 10(b) requiring that a complaint be filed within six months of the unfair labor practice charged" 369 U.S. 736, 748, n. 16, 82 S.Ct. 1107, 1114.